# UNITED STATES DISTRICT COURT

_____ DISTRICT OF MASSACHUSETTS _____

### UNITED STATES OF AMERICA

## CRIMINAL COMPLAINT

**v.**

M.J. No.: *04-M00021-LPC*

### MATTHEW RAMOS

(Name and Address of Defendant)

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about **October 29, 2003,** _____

_____ in **Suffolk** County and elsewhere in the District of **Massachusetts** ,

defendant did, (Track Statutory Language of Offense)

**knowingly and intentionally distribute a mixture or substance containing a detectable amount of oxycodone, a Schedule II controlled substance,**

in violation of Title **21** United States Code, Section **841(a)(1)** .

I further state that I am a(n) **DEA Task Force Officer** _____
Official Title

and that this complaint is based on the following facts:

**See Affidavit of William Parlon**

Continued on the attached sheet and made a part hereof:  [x] Yes [ ]No

_____
Signature of Complainant
Task Force Officer

Sworn to before me and subscribed in my presence,

**August 12, 2004** at  **Boston, Massachusetts**
Date                                              City and State

**Lawrence P. Cohen**
**United States Magistrate Judge**              _____
Name and Title of Judicial Officer              Signature of Judicial Officer

Suffolk, ss.                              Boston, Massachusetts
                                          August 12, 2004

### AFFIDAVIT OF TASK FORCE OFFICER WILLIAM PARLON

**I, Task Force Officer William Parlon, depose and state as
follows:**

1.    I am a Task Force Officer deputized by the Drug
Enforcement Administration ("DEA") pursuant to 21 U.S.C. § 878.
I am also a Boston Police Officer and have been so for the past
12 years.  I currently hold the rank of Detective.  From 1995-
1998 and from 2000 to the present, I have been assigned to the
Drug Control Unit in Dorchester, Massachusetts.  That Unit is
responsible for investigating violations of the federal and state
controlled substances laws.

2.    I have received specialized training in the field of
narcotics identification and investigation from the DEA, the
Boston Police Academy, and from outside instructors.  This
training has included use of confidential informants, undercover
operations, physical surveillance, and search warrants, among
other things.  It has also included specialized instruction in
the investigation of multi-tiered drug organizations and the use
of wire and electronic communications devices by drug
traffickers.  I have participated in over 1,000 investigations of
drug crime in the role of case agent, undercover officer,
surveillance agent, and/or wiretap monitor, among other things.

3.    In the course of my work I have utilized various
investigatory tools and techniques, including confidential

informants, cooperating witnesses, physical surveillance, search warrants, telephone toll analysis, and witness interviews.  I am familiar with the benefits and limitations of these techniques. I previously have submitted affidavits in conjunction with applications for search warrants and arrest warrants in various courts of the Commonwealth of Massachusetts, and I have been qualified as an expert in the area of drug packaging, processing, and trafficking in Dorchester District Court.  I am familiar with narcotics traffickers' methods of operation, including the distribution, storage, and transportation of narcotics and the collection of money that constitutes the proceeds of narcotics trafficking activities.  I am also familiar with the typical price, packaging, and method of sale of narcotics in eastern Massachusetts.

4.    I submit this affidavit in support of a complaint charging MATTHEW RAMOS with distribution of a mixture or substance containing a detectable amount of oxycodone, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

5.    The information contained in this affidavit is based on my own observations or has been related to me by law enforcement officers involved in the investigation.  This affidavit does not set forth all the facts developed during the course of this investigation.  Rather, it sets forth only those facts that I believe are necessary and sufficient to establish probable cause

2

to charge MATTHEW RAMOS with violating 21 U.S.C. § 841(a)(1).

6.   In October 2003, DEA Task Force Officer ("TFO") Richard
Ridlon made arrangements through a third party to purchase
Oxycontin pills from RAMOS.  ("Oxycontin" is the brand name of a
prescription medication that contains oxycodone.)  On October 29,
2003, TFO Ridlon (acting in an undercover capacity) drove to
RAMOS's house at 1A Philomena Drive in Revere, Massachusetts, to
purchase the drugs.  RAMOS came out of his house and had a
conversation with TFO Ridlon which TFO Ridlon tape recorded.   TFO
Ridlon told RAMOS that he had brought $12,000 with him.   RAMOS
expressed disappointment that TFO Ridlon had not brought enough
money to purchase an even greater quantity of drugs, but he
eventually agreed to sell TFO Ridlon 272 Oxycontin pills for
$12,000.  RAMOS went inside his house to count the pills.
Approximately 20 minutes later, RAMOS emerged from his house,
entered TFO Ridlon's car, and sold TFO Ridlon 272 80-milligram
Oxycontin pills for $12,000.  RAMOS then told TFO Ridlon that he
wanted to continue doing business with him.

7.   Approximately four weeks later, on November 25, 2003,
RAMOS spoke to TFO Ridlon by telephone.  He asked him, in code,
if he wanted to buy more Oxycontin pills.  TFO Ridlon said he was
busy but would call RAMOS in a week.  On December 1, 2003, the
two men had another conversation, which TFO Ridlon tape recorded.
RAMOS again asked TFO Ridlon (in code) if he was ready to buy
more Oxycontin.  TFO Ridlon replied that he was still collecting

3

money (meaning that he was still collecting money from his own
sale of the 272 Oxycontin pills that RAMOS had sold him on
October 29, 2003) and would call RAMOS when he had the money he
needed.   Because of other investigations, among other reasons,
TFO Ridlon did not call RAMOS back until late January 2004.

8.   On January 26, 2004, TFO Ridlon spoke to RAMOS and
asked RAMOS if he would be around later in the week, signaling
that he wished to purchase additional Oxycontin pills from RAMOS
at that time.   RAMOS replied that he had not "done anything for,
like, two weeks," but would "try and grab some things if you need
it that bad."   TFO Ridlon understood this to mean that RAMOS had
not done any Oxycontin pills for the past two weeks but would try
to obtain Oxycontin for TFO Ridlon if TFO Ridlon really wanted
it.   RAMOS then told TFO Ridlon to call him when he was ready and
he (RAMOS) would see what he could do.   This entire call was
consensually tape recorded.

9.   On January 27, 2004, I followed RAMOS and a friend of
RAMOS's into a Chinese Restaurant and sat at the table next to
them so that I could eavesdrop on their conversation.   (I wore
plain clothes so that I would not be recognized as a police
officer.)   TFO Ridlon then dialed RAMOS's telephone number, and I
heard RAMOS's cell phone ring.   I saw RAMOS look at the Caller
Identification information on his cell phone and say to his
friend, "That's that guy Richie from New Hampshire calling me,"
referring to TFO Ridlon, whom RAMOS knew as "Richie" from New

4

Hampshire.  RAMOS then said to his friend that he was not going to answer TFO Ridlon's call because TFO Ridlon had not called him for two months (i.e. referring to the nearly two-month gap between TFO Ridlon's December 1, 2003 and January 26, 2004 phone calls to him).  RAMOS's friend urged RAMOS to answer the call, remarking that TFO Ridlon was a "good customer" (or words to that effect).  Despite the friend's urging, RAMOS did not answer the phone, and TFO Ridlon left a message for RAMOS to call him back.

    10.  Later on January 27, 2004, RAMOS returned TFO Ridlon's call.  TFO Ridlon, speaking in code, told RAMOS that he was ready to buy more Oxycontin pills.  RAMOS, also speaking in code, indicated that he was not selling Oxycontin at that time because he no longer had a source of supply.  TFO Ridlon told RAMOS to tell him if he found a source of Oxycontin because TFO Ridlon did not want to meet anyone new; RAMOS said that he would let TFO Ridlon know if he was able to sell him more Oxycontin and added that he, too, did not want to deal with any new people.  This call, which TFO Ridlon tape recorded, was TFO Ridlon's last conversation with RAMOS.

    11.  Based upon the foregoing, and based upon my training and experience, there is probable cause to believe that MATTHEW RAMOS has knowingly and intentionally distributed a mixture or substance containing a detectable amount of oxycodone, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

I, having signed this affidavit under oath, as to all assertions and allegations contained herein, state that its contents are true and correct to the best of my knowledge, information and belief.

_____
WILLIAM PARLON
Task Force Officer
Drug Enforcement Administration

Sworn to before me on
this 12th day of August, 2004.

_____
LAWRENCE P. COHEN
UNITED STATES MAGISTRATE JUDGE

6

**Criminal Case Cover Sheet**          **U.S. District Court - District of Massachusetts**

**Place of Offense:**        **Category No.** _II_      **Investigating Agency** _DEA_

**City** _Revere_        **Related Case Information:**

**County** _Suffolk_

| | | |
|---|---|---|
| Superseding Ind./ Inf. _____ | Case No. _____ | |
| Same Defendant _____ | New Defendant _____ | |
| Magistrate Judge Case Number | _____ | |
| Search Warrant Case Number | _____ | |
| R 20/R 40 from District of | _____ | |

**Defendant Information:**

**Defendant Name** _Matthew Ramos_      Juvenile   ☐ Yes   ☒ No

**Alias Name** _____

**Address** _1A Philomena Drive, Revere, MA_

**Birth date:** _____ **SS#:** _____ **Sex:** _M_ **Race:** _Caucasion_ **Nationality:** _USA_

**Defense Counsel if known:** _____ **Address:** _____

**Bar Number:** _____

**U.S. Attorney Information:**

**AUSA** _William D. Weinreb_      **Bar Number if applicable** _____

**Interpreter:**   ☐ Yes   ☒ No      **List language and/or dialect:** _____

**Matter to be SEALED:**   ☒ Yes   ☐ No

     ☒ Warrant Requested      ☐ Regular Process      ☐ In Custody

**Location Status:**

**Arrest Date:** _____

☐ **Already in Federal Custody as** _____ in _____ .
☐ **Already in State Custody** _____ ☐ Serving Sentence   ☐ Awaiting Trial
☐ **On Pretrial Release:** Ordered by _____ on _____

**Charging Document:**   ☒ Complaint    ☐ Information    ☐ Indictment

**Total # of Counts:**   ☐ Petty _____   ☐ Misdemeanor _____   ☒ Felony _1_

Continue on Page 2 for Entry of U.S.C. Citations

☒    I hereby certify that the case numbers of any prior proceedings before a Magistrate Judge are accurately set forth above.

**Date:** _____      **Signature of AUSA:** _____

JS 45 (5/97) - (Revised USAO MA 3/25/02) Page 2 of 2 or Reverse

**District Court Case Number  (To be filled in by deputy** _____

**Name of Defendant** ____ **Matthew Ramos** _____

## U.S.C. Citations

| | Index Key/Code | Description of Offense Charged | Count Numbers |
|---|---|---|---|
| Set 1 | 21 USC § 841(a)(1) | Distribution of oxycodone | |
| Set 2 | | | |
| Set 3 | | | |
| Set 4 | | | |
| Set 5 | | | |
| Set 6 | | | |
| Set 7 | | | |
| Set 8 | | | |
| Set 9 | | | |
| Set 10 | | | |
| Set 11 | | | |
| Set 12 | | | |
| Set 13 | | | |
| Set 14 | | | |
| Set 15 | | | |

**ADDITIONAL INFORMATION:** _____

_____

_____

JS45 for Indictment.wpd - 3/13/02